# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RODNEY WAGONER,                                    Case No. 1:11-cv-543
      Plaintiff                              Beckwith, J.
                                                   Litkovitz, M.J.

    vs

COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
      Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and Supplemental Security Income (SSI).  This matter is

before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in

opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 14).

## I.  Procedural Background

Plaintiff filed applications for DIB and SSI on January 15, 2008, alleging disability since

November 15, 2006, due to diabetes, hypertension, and slipped discs.  Plaintiff's applications

were denied initially and upon reconsideration.  Plaintiff, through counsel, requested and was

granted a de novo hearing before Administrative Law Judge (ALJ) Christopher B. McNeil.

Plaintiff, a vocational expert (VE), and a medical expert (ME) appeared and testified at the ALJ

hearing.  On April 26, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI

applications.  Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

## II.  Medical Evidence

Prior to the alleged onset date, plaintiff presented to the emergency room at Good Samaritan Hospital on April 5, 2002, with uncontrolled diabetes.  (Tr. 285-293).  He was started on long-acting Insulin and Zestril[1] (Tr. 289).

At a checkup on September 24, 2004, plaintiff reported that although he had been taking Actos[2], he had been out of his diabetes medications for one year.  (Tr. 303).  Plaintiff was prescribed Avandamet[3] for his diabetes.  (*Id*.).  When he was seen again on August 16, 2005, it was noted that plaintiff was "noncompliant . . . in spite of . . . possible complications of diabetes and [hypertension]" having been explained to him.  (Tr. 298).

Plaintiff was treated by a chiropractor, Brian Johnson, D.C., at Northgate Chiropractic Center for two months beginning November 20, 2006, after he was injured in an automobile accident on October 24, 2006.  (Tr. 382-404).  Dr. Johnson prepared a narrative report on January 24, 2007, the date of plaintiff's discharge from his care.  (Tr. 385-387).  Dr. Johnson reported that plaintiff initially presented with complaints of neck pain, right shoulder pain, headaches, restricted motion, low back pain, and mid-back pain.  (Tr. 385).  Examination revealed a number of positive test results, and plaintiff showed decreased strength of the right deltoid, right biceps, right triceps and right wrist flexion.  (Tr. 385-86).  There was spasm, edema and swelling of the cervical, thoracic and lumbar spines and right shoulder.  (Tr. 386).  Dr. Johnson diagnosed

---

[1]Zestril is a drug used to treat high blood pressure.  http://www.drugs.com/zestril.html.

[2]Actos is an oral medication used to treat diabetes.  http://www.drugs.com/zestril.html.

[3]Avandamet is a medication for people with type 2 diabetes who do not use daily insulin injections. http://www.drugs.com/Avandamet.html.

plaintiff with cervical, shoulder, lumbar and thoracic sprain/strains and cephalgia (headache).
(*Id.*).  Dr. Johnson reported that the response to treatment, which consisted of spinal adjustments
and physical therapy, had been satisfactory.  (Tr. 386-87).  Dr. Johnson reported that plaintiff still
complained of "occasional pain/stiffness" and he opined that the involved areas would present
problems "periodically," but it was his opinion that plaintiff had received maximum benefits
from chiropractic treatment and plaintiff was therefore discharged.  (Tr. 387).

Plaintiff presented to the emergency room at Mercy Franciscan Hospital on October 3,
2007, complaining of blurry vision.  (Tr. 315).  He reported he had not had his medications for
over a year because he was unable to afford them.  (*Id.*).  He was in no apparent distress on
physical examination, there were no positive musculoskeletal or neurologic findings reported,
and it was noted that he moved all extremities equally.  Plaintiff had high blood sugar, he was
diagnosed with diabetes and hypertension, and he was referred to his regular physician.  (Tr.
316).

Plaintiff presented to the emergency room at The University Hospital on November 17,
2007, with right-sided low back pain radiating to his right groin.  (Tr. 323-326).  Plaintiff
reported that he had been experiencing the pain for the past 30 days and it had been getting
progressively worse.  (Tr. 323).  He described the pain as 7/10 on the pain scale but was noted to
be in no acute distress on physical examination.  (*Id.*).  The pain was radiating to an area where
plaintiff had previously undergone an inguinal hernia resection.  (*Id.*).  Plaintiff complained of
some intermittent numbness and tingling in his right leg but the pain was not significant and he
had no sciatica.  (*Id.*).  Plaintiff related that he had been taking some medications over the last
month, and beginning those medications may have coincided with some difficulty starting his

3

urine stream.  (*Id.*).  On physical exam, he had mild tenderness to palpation in the paraspinal

muscles of the right lumbar spine. (Tr. 324).  The neurologic exam results were normal.  (*Id.*).

Plaintiff was diagnosed with back pain that appeared to be musculoskeletal in origin, but it was

noted that plaintiff appeared to have a urinary tract infection that could be causing his pain.  (*Id.*).

He was prescribed medication for the infection and told to follow up with a clinician in the next

five to ten days.  (*Id.*).

Plaintiff presented to the emergency room two months later on January 16, 2008,

complaining of back pain that reportedly began in approximately mid-November when he was

lifting a television. (Tr. 327-336).  Plaintiff reported he was seen in the emergency room and

treated with pain medications at that time, his pain had improved in that it was now more

concentrated in just his right low back, and the pain sometimes went down his right outer thigh

but no further. (Tr. 327).  Plaintiff stated that the pain had grown worse over the last few days.

(*Id.*).  Plaintiff reported that he had experienced back pain off and on since a car accident a year

earlier.  (*Id.*).  He also complained of pain in his right groin near the site of his previous hernia

operation.  (*Id.*).  Plaintiff was reported to be in no distress, and it was noted that he slept

comfortably after taking ibuprofen. (Tr. 328).  On physical exam, he had mild right paraspinal

muscle spasm.  (*Id.*).  He was able to lift both legs off the bed; he had 5/5 strength in his lower

extremities; his gait was normal; and he had normal sensation and strength in his lower

extremities.  (*Id.*).  He was diagnosed with musculoskeletal back pain and was discharged to be

treated with Flexeril and ibuprofen as needed and to follow up with his primary care physician

for further management.  (*Id.*).

Plaintiff was seen as a new patient by Dr. Carl Gandola, M.D., at the Northside Health

4

Center on February 19, 2008. (Tr. 337-340). He complained of right leg and back pain and a "funny sensation" in his right leg that had persisted for six weeks or longer. (Tr. 340). Plaintiff reported he had been diagnosed with a "slipped disc" when seen at the University Hospital emergency room four weeks earlier. (*Id*.). Plaintiff reported he was out of ibuprofen 800 mg for pain relief. (*Id*.). Dr. Gandola noted under plaintiff's present history and chief concern: "Neglect: Hypertension, diabetes. Also expects pain pills for back - has had for 2-3 years since 2006 [motor vehicle accident]." (Tr. 338). There were no positive neurological findings, no tenderness or limited motion or tenderness was noted, and straight leg raising was negative. (Tr. 339). Dr. Gandola diagnosed plaintiff with back pain and diabetes. (*Id*.). He prescribed Tylenol and linament, and noted "to physical therapy" as part of the treatment plan. (*Id*.; Tr. 353).

During a routine office visit with Dr. Gandola on April 1, 2008, plaintiff reported his back pain was "pretty good." (Tr. 357). Dr. Gandola diagnosed plaintiff with "minor musculoskeletal [pain.]" (*Id*.).

During an office visit with Dr. Gandola on June 2, 2008, plaintiff complained of recurrent left extremity numbness over the past seven months and requested refills of his medications. (Tr. 356).

Plaintiff presented to the emergency room at Good Samaritan Hospital on May 17, 2009, complaining of an injury to his right shoulder that reportedly had happened three weeks earlier. (Tr. 410-411). Plaintiff had no other complaints. (Tr. 410). Plaintiff had limited range of motion secondary to the pain. (*Id*.). X-rays showed (1) a large downsloping acromial spur, (2) narrowing of the subacromial space seen on the external rotation, suggesting the possibility of an underlying cuff impingement, and (3) osteoarthritis of the glenohumeral joint. (Tr. 411).

5

Plaintiff was diagnosed with an acute right shoulder strain. (Tr. 410). He was prescribed Vicodin and Motrin and advised to follow up with his primary care physician and an orthopedist. (*Id.*).

State agency physician Dr. Jerry W. McCloud, M.D., reviewed the file on April 17, 2008, and completed a physical residual functional capacity (RFC) assessment. (Tr. 366-373). He found that plaintiff can occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday, and he has no postural limitations. As support for his findings, Dr. McCloud noted that plaintiff had mild tenderness to palpation in the paraspinal muscles of the right lumbar when he presented to the emergency room in November 2007, but there was no evidence of a neurological deficit; during his emergency room visit in January 2008 for back pain that became worse after lifting a television, he was able to lift both legs off the bed, he ambulated with a normal gait, he had normal sensation and strength in the lower extremities, and his back pain improved after receiving ibuprofen; and when he requested pain pills for his back at a local clinic in February 2008, straight leg raising was negative and he had no motor sensory deficits. (Tr. 637-38). Dr. McCloud also noted that when plaintiff went to the emergency room in October 2007, he reported he had been without his diabetes and high blood pressure medications for more than one year. (Tr. 368). In addition, Dr. McCloud opined that plaintiff was only partially credible. (Tr. 371). He noted that plaintiff had received only sporadic medical treatment over the years; there was no objective evidence of functional limitations on exam despite plaintiff's complaints of back pain and no imaging tests had been performed; plaintiff ambulated with a normal gait and had full range of motion; and although plaintiff's medically determinable impairment of diabetes

6

was well-supported by the record, the severity of the alleged functional loss was not. (*Id.*). Dr.

Kathryn Drew, M.D., affirmed Dr. McCloud's opinion as written on October 1, 2008, finding the

medical evidence did not support the worsening of plaintiff's conditions and plaintiff's

allegations remained partially credible. (Tr. 374).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is

disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act
> through June 30, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since November
> 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: right shoulder
> osteoarthritis, diabetes and hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that
> meets or medically equals one of the listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the
> claimant has the residual functional capacity (RFC) to perform less than a full
> range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that
> he can occasionally lift not more than 50 pounds; he can frequently lift not more
> than 25 pounds, push or pull not more than 25 pounds using hand or foot controls,

but only rarely pushing or pulling with the right upper extremity, only rarely reaching overhead with the left arm and no overhead reaching with the right arm; he cannot do more than occasional crawling; and he can sit, stand and walk about six hours each in an eight hour work day.

6. The claimant is capable of performing his past relevant work as a grocery clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from November 15, 2006, through the date of [the ALJ's] decision (20 CFR 404.1520(f & g) and 416.920(f & g)).

(Tr. 14-19).

In addition, although the ALJ found that plaintiff was capable of performing his past relevant work as a grocery clerk, the ALJ in the alternative determined there are other jobs existing in the national economy plaintiff is able to perform. (Tr. 18). Relying on the testimony of the vocational expert, and considering the claimant's age, education, work experience, and residual functional capacity, the ALJ determined there are jobs that exist in significant numbers in the national economy that the claimant can perform.[4]

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

---

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the unskilled medium jobs of packer, of which there are approximately 450,000 jobs in the national economy and 1,200 jobs locally; cleaner, of which there are approximately 300,000 jobs nationally and 1,800 locally; warehouse worker, of which there are approximately 50,000 jobs nationally and 1,000 locally; and the light jobs of packer, of which there are approximately 150,000 jobs nationally and 700 locally, and utility worker, of which there are approximately 75,000 jobs nationally and 450 locally. (Tr. 19).

9

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred by failing to fully develop the medical evidence of record, (2) the ALJ improperly found plaintiff's musculoskeletal back condition to not be a severe impairment; (3) the ALJ erred by improperly assessing plaintiff's credibility; (4) the ALJ erred by failing to accord sufficient weight to the progress notes and findings of the treating chiropractor; and (5) the ALJ erred by selectively choosing from the record the evidence that supported a finding of non-disability.

### 1. The ALJ did not err by failing to fully develop the medical evidence.

Plaintiff contends that the ALJ violated his duty to fully develop the record by failing to

10

order a physical consultative examination and lumbar x-rays. (Doc. 6 at 8-10, citing HALLEX (Hearings, Appeals & Litigation Law Manual)[5] I-1-3-7-11, 1-2-5-14 ; 20 C.F.R. §§ 404.944, 404.1513(b)(6); *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality opinion); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). Plaintiff contends that his counsel asked the ALJ to order an evaluation and x-rays both at the hearing and in writing after the hearing because plaintiff's back impairment could not otherwise be properly evaluated due to plaintiff's inability to afford medical care. (Doc. 6 at 9, citing Tr. 28, 84, 273). Plaintiff asserts that the reasonableness of his request is supported by the testimony of the medical expert, Dr. Walter C. Hulon, M.D., who testified that x-rays would be helpful in plaintiff's case. (*Id.*, citing Tr. 34-35, 43, 51). Plaintiff contends that the ALJ refused to order the reasonable testing requested by plaintiff's counsel simply because the ALJ misconstrued the request as one for a government-funded MRI. (*Id.* at 9, citing Tr. 15).

The ALJ is responsible for ensuring that each claimant receives a "full and fair hearing" *Lashley*, 708 F.2d at 1051 (citing *Richardson v. Perales*, 402 U.S. 389 (1971)) and for fully developing the record. *Id.* In fulfilling his obligation, the ALJ has the discretion to determine whether it is necessary to obtain additional evidence. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). *See also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but

---

[5]The HALLEX can be found at https://www.socialsecurity.gov/OP_Home/hallex/.

11

simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.") (citing 20 C.F.R. § 416.917(a)).  HALLEX I-2-5-20 likewise provides that the decision whether to obtain additional evidence is within the ALJ's discretion.[6] That provision states that if the claimant does not provide adequate evidence about his impairments for the ALJ to determine whether he is disabled, and the ALJ is unable to obtain adequate evidence from the claimant's treating sources or other medical sources, the ALJ "may request" a consultative examination or tests through the State agency.  *Id.*  The ALJ should request only the specific examinations or tests he needs to make a decision.  *Id.*, note.

Here, the ALJ did not abuse his discretion by failing to order a consultative examination and x-rays of plaintiff's lumbar spine.  First, the record belies plaintiff's contention that the ALJ erroneously refused counsel's request for a consultative examination with x-rays simply because he misconstrued the request as one for a government-funded MRI.  At the ALJ hearing, counsel specifically asked for "a complete physical examination with, in particular, lumbar x-rays" (Tr. 28) and "for a physical exam [] primarily for the lumbar x-rays."  (Tr. 84).  The ALJ twice denied counsel's request, stating that he had reviewed all the medical records and found no evidentiary basis for granting counsel's request.  (Tr. 28, 84).  The ALJ's decision states that he was denying plaintiff's request for "a consultative exam and MRI" to determine whether he has disc disease because although Dr. Hulon opined that an MRI would help to rule out degenerative disc disease, there was insufficient evidence in the record to suggest the presence of degenerative disc disease.

---

[6]Plaintiff cites Hallex I-3-7-11, "Remand for Medical Evidence," and HALLEX I-2-5-14, "Obtaining Medical Evidence from a Treating Source or Other Medical Source," for the proposition that the ALJ has the power to order consultative examinations.  (Doc. 6 at 8-9).  However, neither of these provisions involve such authority.  Rather, HALLEX I-2-5-20 governs the ALJ's authority to order consultative examinations and tests.

12

(Tr. 15). Thus, it is clear from the ALJ's hearing testimony and decision that he denied the request for a consultative exam and imaging because he did not believe the medical evidence of record warranted further exams or testing and not because of the specific imaging test requested.

Moreover, the ALJ's decision that neither a consultative exam nor additional testing was warranted finds substantial support in the record. The ALJ was entitled to rely on the opinion of the medical expert, Dr. Hulon, as to the nature and severity of plaintiff's back impairment, and did not need to obtain a consultative exam and x-rays for this purpose. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) (ALJ may ask for and consider opinions from medical experts on the nature and severity of your impairments). Dr. Hulon completed medical interrogatories in which he stated there was sufficient objective medical and other evidence to allow him to form opinions about the nature and severity of plaintiff's impairments. (Tr. 405). In the interrogatories, Dr. Hulon acknowledged plaintiff's back pain, noting that plaintiff had been treated by the chiropractor for his back pain for two months with improvement (Tr. 406, citing Tr. 382-404); plaintiff was treated periodically by his primary care physician with ibuprofen, which seemed to relieve his pain; and clinical examinations were negative for spinal nerve involvement, sensory tests of the lower extremity were normal, straight leg raising was negative, and there was no weakness of the lower extremity. (*Id.*, citing Tr. 379 - Dr. Gandola exam of 11/24/09). (*Id.*). Dr. Hulon indicated that he agreed with the RFC of the state agency reviewing physicians, who considered plaintiff's back pain to be a non-severe impairment. (Tr. 406, citing Tr. 366-373). Although plaintiff alleges that Dr. Hulon changed his mind at the hearing about the sufficiency of the evidence before him and testified that he could not make a decision in plaintiff's case without imaging (Doc. 14 at 2), a full review of Dr. Hulon's testimony

13

does not support plaintiff's interpretation of the testimony.  Rather, while Dr. Hulon testified at one point that in general he "can't make [a decision] without [imaging]," (Tr. 51), he indicated elsewhere in his testimony that while imaging would have been helpful in plaintiff's case in order to make a definitive diagnosis, it was not necessary because the clinical exam results, the lack of symptomatology, and the lack of positive neurological and other objective findings failed to corroborate plaintiff's complaints of pain and instead demonstrated that he experienced no more than minimal pain; therefore, plaintiff's symptoms did not warrant his providers in obtaining imaging.  (Tr. 39-43).

Third, the ALJ did not abuse his discretion by deciding not to order additional tests in view of the lack of objective evidence of back pain.  Plaintiff states that he sought treatment from a chiropractor after an automobile accident in 2006 (Doc. 6 at 3, citing Tr. 382-404) and that he continued to complain of pain to his primary care physician and to emergency room physicians. (*Id.* at 2, citing 323-25, 327-28, 338-40, 352-60, 376-80, 385-405).  However, the only positive findings contained in these records following plaintiff's treatment with the chiropractor were mild tenderness to palpation in the paraspinal muscles of the right lumbar spine when plaintiff presented to the emergency room with a possible urinary tract infection in November 2007 (Tr. 324) and mild paraspinal muscle spasm on the right side in January of 2008.  (Tr. 328).  The treatment notes contain no positive neurologic exam results or other positive findings following these emergency room visits.

For these reasons, the ALJ did not abuse his discretion by deciding not to order a consultative exam and additional tests.  Plaintiff's first assignment of error should be overruled.

14

**2. The ALJ did not err by finding plaintiff's back impairment was not a severe impairment.**

Plaintiff alleges as his second assignment of error that the ALJ erred by finding his musculoskeletal back pain is not a severe impairment. (Doc. 6 at 10-11). Plaintiff alleges that the ALJ erroneously conflated two standards for assessing impairments - the minimal threshold inquiry of whether an impairment is severe and the question of whether an impairment meets a Listing. (*Id*.). Plaintiff contends that the ALJ appeared to assume his back pain is not severe because it lacks a neurologic component, which is error because Dr. Hulon admitted that musculoskeletal back pain or spasm can limit an individual's work activities. (*Id*. at 11). Plaintiff contends that had the ALJ properly considered his pain to be a severe impairment, he would have found that plaintiff is much more restricted with respect to standing, walking and lifting, and thus it is much more likely that plaintiff would be found disabled. (*Id*.).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities necessary to perform most jobs, such as the ability to perform physical functions. 20 C.F.R. §§ 404.1521(b), 416.921(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality

15

which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Here, the ALJ determined that plaintiff had three severe impairments: right shoulder osteoarthritis, diabetes and hypertension. (Tr. 14). The ALJ also found that plaintiff had right paraspinal muscle spasm with musculoskeletal back pain (Tr. 15, citing Tr. 328) but that "these impairments are fairly mild and/or are reasonably well controlled," they "result in no more than minimal functional limitations," and they therefore are not severe. (Tr. 15). The ALJ found that the records of the treating chiropractor were entitled to some weight, but they were not sufficiently probative of the material facts at issue in the case and they did not persuasively establish a severe spinal impairment. (Tr. 15).

Substantial evidence supports the ALJ's determination that plaintiff's back pain is not a severe impairment. There is no medical or other objective evidence of record that shows plaintiff's back pain limits him to any extent, and the ALJ was entitled to reject plaintiff's complaints of back pain as lacking credibility for the reasons explained below in connection with plaintiff's third assignment of error. Moreover, contrary to plaintiff's suggestion, Dr. Hulon's testimony does not require a finding that plaintiff's back impairment is severe. (Doc. 6 at 11, citing Tr. 37-39). Dr. Hulon acknowledged that hypothetically, musculoskeletal pain can cause reduced function, but he testified that plaintiff had no physical examination or clinical findings to

16

corroborate more than minimal complaints of back pain. (Tr. 35-42). As there is no medical or other objective evidence of record that shows plaintiff is functionally limited to any degree by his back pain, the ALJ did not err by determining plaintiff's back condition imposes no more than minimal functional limitations on him and is therefore not a severe impairment. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ did not err by improperly assessing plaintiff's credibility.

Plaintiff contends that the ALJ did not follow the standard for assessing his statements about his pain set forth in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852-53 (6th Cir. 1986). (Doc. 6 at 11-14, citing *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997)). Plaintiff contends that his back pain is due to "the spasm and musculoskeletal changes" in his back; musculoskeletal back pain is a medically determinable impairment; and it is reasonable to believe that musculoskeletal changes would cause the level of pain and the limitations to which he testified. (Doc. 6 at 12). Plaintiff contends that his complaints of back pain are supported by objective findings in the form of spasm, restricted range of motion, and other findings by the chiropractor (Doc. 6 at 12, citing Tr. 379, 385-404); by his testimony as to how his work as a meat cutter and his current part-time work as a maintenance man have been restricted by his back pain in that he can perform only small tasks, such as putting up small pieces of dry wall or installing a faucet, and he must leave more demanding jobs such as shoveling snow to others (*Id.*, citing Tr. 56, 58); by his testimony as to his limited daily activities and the fact that only a small amount of work aggravates his back pain (*Id.* at 13, citing Tr. 60-61, 63-66); and by his testimony that he needs to use other modalities, such as frequent changes in position, to help alleviate his pain. (*Id.*, citing Tr. 64). Plaintiff

17

contends that the ALJ erroneously relied on the opinions of Dr. Hulon and the state agency reviewing physicians to discredit his testimony about the severity of his pain and ignored objective evidence. (*Id.*). Plaintiff further contends that the ALJ erred by taking plaintiff's failure to comply with medical treatment into account as plaintiff's inability to afford his medications is not an acceptable reason to discount his credibility. (*Id.* at 13-14, citing 20 C.F.R. §§ 404.1530, 416.930 (to obtain benefits, plaintiff must follow prescribed treatment if it will restore his ability to work)).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  In order to find a claimant disabled on the basis of pain alone, the ALJ must first determine whether there is objective medical evidence of an underlying medical condition. *Duncan*, 801 F.2d at 852-53.  If there is, the ALJ must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the objectively established underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*  Although the claimant is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Id.*, statements about his pain or other symptoms are not sufficient to prove his disability. *Id.* at 852 (citing 20 C.F.R. § 404.1529).  The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a).

In addition to the objective medical evidence, the ALJ must consider other evidence of

18

pain, such as evidence of plaintiff's daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Social Security Regulation 96-7p, 1996 WL 374186, at *2 (July 2, 1996), describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(emphasis added).

19

Here, the Court must defer to the ALJ's decision to discount plaintiff's complaints of disabling pain because substantial evidence supports a finding that neither prong of the two-part *Duncan* test is satisfied with respect to plaintiff's back condition. First, substantial evidence supports a finding that the evidence of record does not confirm the severity of the pain alleged by plaintiff. Although it was noted by plaintiff's physicians after January 2007 that he claimed to be having pain, none of the physicians diagnosed the pain as severe or disabling. *See Duncan*, 801 F.2d at 853. In fact, plaintiff was noted to be in no acute distress when he presented to the emergency room complaining of back pain in November 2007 (Tr. 323); he was reported to be in no distress and to be sleeping comfortably after taking ibuprofen for back pain at the emergency room in January 2008 (Tr. 328); and it was noted that plaintiff reported his back was "pretty good" at an April 2008 office visit. (Tr. 357).

Second, substantial evidence supports a finding that plaintiff's back condition is not so severe that it could reasonably be expected to produce the allegedly disabling pain. *See Duncan*, 801 F.2d at 853-54. Plaintiff references "musculoskeletal changes" in his back that purportedly could cause his pain (Doc. 6 at 12), but he cites no evidence of such changes in the medical records. Plaintiff was treated for a back strain and sprain from November 2006 to January 2007, but from that point there is nearly no objective evidence of an ongoing medical condition related to plaintiff's back. Plaintiff contends that the medical records consistently show positive objective signs including spasm, tenderness to palpation, and restricted range of motion (*Id*. at 13, citing Tr. 323-36, 346-65, 382-404), but the only positive objective findings related to plaintiff's back subsequent to January 2007 are contained in the November 2007 emergency room report, where it is noted that plaintiff had mild tenderness to palpation in the paraspinal

20

muscles of the right lumbar spine (Tr. 324) and the January 2008 emergency room report, where mild right paraspinal muscle spasm is noted. (Tr. 328). There is no evidence of muscle atrophy, which is typically associated with severe pain, *see Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); no evidence of neurological defects such as normally accompany complaints of severe pain, *see Mullen v. Bowen*, 800 F.2d 535, 547-48 (6th Cir. 1986); and no evidence of reduced joint motion or sensory and motor disruption. *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (objective medical evidence such as muscle atrophy, reduced joint motion, muscle spasms, and sensory and motor disruption are usually "reliable indicators" of intense pain). In the absence of such evidence, and in view of the isolated, mild findings related to plaintiff's back impairment (Tr. 324, 328), the ALJ had an adequate basis to conclude that plaintiff's objectively established medical condition was not so severe that it could reasonably be expected to produce disabling pain. *See Duncan*, 801 F.2d at 853-54.

Plaintiff also points to his own subjective testimony as evidence confirming the extent of his alleged limitations and pain, but such subjective evidence does not satisfy the two-part *Duncan* test and cannot alone support a finding of disability. *Duncan*, 801 F.2d at 852; 20 C.F.R. §§ 404.1529, 416.929. *See also McCormick v. Secretary*, 861 F.2d 998, 1003 (6th Cir. 1988). Moreover, the ALJ properly relied on a number of factors in finding that plaintiff's complaints as to his symptoms and limitations were not fully credible. The ALJ reasonably relied on plaintiff's testimony that he is typically able to work about 25 hours a week and he does some household chores such as washing dishes, and on plaintiff's report in March 2008 that he cooks some meals, does household chores, and goes shopping for food and cleaning supplies.

21

(Tr. 16-17, citing Tr. 208-220).  *See Vance v. Commissioner of Social Sec.*, 260 F. App'x 801,

805 (6th Cir. 2008) (ALJ may consider activities of daily living in evaluating plaintiff's

assertions of pain or ailments) (citing *Walters*, 127 F.3d at 531; 20 C.F.R. § 416.929(a)).

Plaintiff has not shown that the ALJ erred in this regard.  Nor did the ALJ err by taking into

account plaintiff's failure to comply with his medical treatment in discounting his credibility.

Plaintiff testified that if he could afford to take his medicine, he would do so on a regular basis

(Tr. 59).  However, as the ALJ noted, plaintiff has been noncompliant with his medication when

he had employment income or access to health care (Tr. 298, 360, 378,  413), and plaintiff

testified there were reasons other than financial hardship that he chose not to take his medication.

(Tr. 73-75).

        For these reasons, the Court has no basis for disturbing the ALJ's credibility

determination.  Plaintiff's third assignment of error should be overruled.

### 4.  The ALJ did not err by failing to accord sufficient weight to the progress notes and findings of the treating chiropractor.

        Plaintiff alleges as his fourth assignment of error that the ALJ erred by failing to accord

sufficient weight to the progress notes and numerous objective findings of the treating

chiropractor, Dr. Brian Johnson, D.C.  (Doc. 6 at 14-17).  Plaintiff asserts that the ALJ erred by

giving these objective findings only "some weight" based on the fact that Dr. Johnson is not an

"approved medical source" under the Social Security regulations and by failing to assess Dr.

Johnson's findings in accordance with the procedures set forth in Social Security Ruling SSR 06-

3p.  (*Id.* at 16).  Plaintiff contends that had the ALJ properly considered Dr. Johnson's objective

findings, he would have been required to find that plaintiff suffers from disabling back pain.

Under the Social Security regulations, evidence from an "acceptable medical source" is required to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p, 2006 WL 2329939, at *2. However, evidence from "other sources" as defined under the regulations may be used to show the severity of the claimant's impairment and how it affects the individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d). A chiropractor is one such "other source." *Id*. The ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence in the record since the chiropractor is not an acceptable medical source. *Walters*, 127 F.3d at 530.

Because Dr. Johnson is not an "acceptable medical source," it was within the ALJ's discretion to determine what weight to accord Dr. Johnson's opinions based on all the evidence in the record. *Walters*, 127 F.3d at 530. The ALJ reasonably decided to give Dr. Johnson's opinions only "some weight" because Dr. Johnson is not an "approved medical source" and the ALJ determined "his opinions are not sufficiently probative of material facts in issue." (Tr. 15). Dr. Johnson treated plaintiff for a brief two-month period following his automobile accident. (Tr. 382-404). At plaintiff's last visit, Dr. Johnson reported that plaintiff had no pain; spasm, edema and joint fixation had dissipated; and plaintiff was being released from care with a good prognosis. (Tr. 404). In his discharge report, Dr. Johnson opined that plaintiff could experience periodic problems in the affected areas, but he reported no positive findings in the report and he did not see plaintiff for any follow-up care. (Tr. 385-87). Dr. Johnson did not give an opinion as to the extent of the functional limitations, if any, resulting from plaintiff's injury. Following his release from Dr. Johnson's care, plaintiff did not seek treatment for his back for another 11 months (Tr. 323-326), and no acceptable medical source documented severe or disabling back

23

pain or made objective findings that established the existence of a medically determinable back impairment. Accordingly, the ALJ did not err by failing to give greater weight to the progress notes and findings of Dr. Johnson. Plaintiff's fourth assignment of error should be overruled.

**5. The ALJ did not err by selectively choosing evidence that supported a finding of non-disability.**

Plaintiff alleges as his fifth assignment of error that the ALJ erred by selectively choosing testimony from the record that supported a finding of non-disability and ignoring evidence and testimony that would substantiate a finding a disability. (Doc. 6 at 17-18). Plaintiff points to two specific items of evidence that the ALJ ignored: (1) Dr. Hulon's purported testimony at Tr. 33 that "spasms existed in Plaintiffs [sic] back," spasms can cause pain, and pain in turn can limit a person's ability to work, which supports a finding plaintiff's back pain is a "severe" impairment (Doc. 6 at 16-17, citing Tr. 33), and (2) Dr. Hulon's testimony that x-ray imaging would allow him to provide a more detailed opinion as to plaintiff's work limitations. (*Id*. at 17; Doc. 14 at 5, citing Tr. 34-35, 43, 51).

The ALJ is obligated to consider the record as a whole. *See Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir. 1985). It is essential for meaningful appellate review that the ALJ articulate reasons for crediting or rejecting particular sources of evidence. *Morris v. Secretary of Health & Human Services*, No. 86-5875, 1988 WL 34109, at \*2 (6th Cir. Apr. 18, 1988). Otherwise, the reviewing court is unable to discern "if significant probative evidence was not credited or simply ignored." *Id*. (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). The ALJ need not provide a "written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the

24

evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* (quoting *Cotter*, 642 F.2d at 705).

Here, the ALJ articulated his reasons for finding plaintiff's back pain is not a severe impairment and for declining to order imaging. The ALJ stated that while Dr. Hulon testified that imaging could be useful to rule out degenerative disc disease, there was insufficient evidence to indicate plaintiff has degenerative disc disease. (Tr. 15). The ALJ also determined there was no cause to order imaging based on the state agency reviewing physicians' medical exams. (*Id.*). The ALJ was under no further obligation to consider testimony offered by Dr. Hulon that mechanical back pain could hypothetically impose functional limitations on an individual, particularly in light of Dr. Hulon's statements that plaintiff had no symptoms indicating he experienced more than minimal pain. (Tr. 35-40). Thus, the ALJ did not err by selectively relying on evidence that supported a finding of non-disability, and plaintiff's fifth assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 7/6/12

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RODNEY WAGONER,                                   Case No. 1:11-cv-543
      Plaintiff                              Beckwith, J.
                                                        Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

26